No. 23-1031

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

QING QIN
*Plaintiff-Appellant*

v.

VERTEX, INC.
*Defendant-Appellee*

---

An Appeal from the Order of Judgment entered
in the United States District Court
for the Eastern District of Pennsylvania
on December 12th, 2022 at Civil Action No. 2:20-cv-02423

---

## BRIEF OF APPELLEE
## VERTEX, INC.

---

William J. Simmons
Tanner McCarron
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
(267) 402-3000

*Attorneys for Appellee*
*Vertex, Inc.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Under Federal Rule of Appellate Procedure 26.1 and Local Appellate Rule 26.1, Vertex, Inc. ("Vertex") states that it is a Pennsylvania non-governmental corporation with no parent company. Vertex is publicly traded under the symbol "VERX".

Respectfully submitted,


*s/ Tanner McCarron*
William J. Simmons (PA #206860)
Tanner McCarron (PA # 327855)

*Attorneys for Appellee*
*Vertex, Inc.*

Date: August 9, 2023

# TABLE OF CONTENTS

**PAGE**

I. JURISDICTIONAL STATEMENT ..............................................................1

II. STATEMENT OF RELATED CASES ........................................................1

III. COUNTER-STATEMENT OF THE ISSUES PRESENTED .....................1

IV. COUNTER-STATEMENT OF THE CASE ...............................................2

    A.    Vertex Switched Management Models To Emphasize Concrete Deliverables and Employee Accountability.......................................3

    B.    Mr. Qin Spent Most Of His Career Working On Exploratory Projects—Not Formal Vertex Initiatives .............................................4

    C.    Ms. Kurtz Deferred The Decision On Mr. Qin's Promotion..............6

    D.    Mr. Qin Received "Usually Meets Expectations" Rating, A PIP, And Is Not Promoted Because He Was Not Fully Engaged In Formal Vertex Strategic Initiatives ....................................................7

    E.    Mr. Qin Complained About A Colleague's Comments In His Review And Vertex Removed The Comment ...................................9

    F.    Mr. Qin Was Not Effective On The PIP As He Failed To Engage With A Formal Vertex Project............................................11

V. STANDARD OF REVIEW .....................................................................11

VI. SUMMARY OF ARGUMENT.................................................................12

VII. ARGUMENT............................................................................................14

    A.    This Court Should Affirm The District Court's Order Because The Alleged Conduct Did Not Create A Hostile Work Environment ......................................................................................14

    B.    The Court Should Affirm The District Court's Order Because There Is No Direct Evidence Of Discrimination...............................17

## TABLE OF CONTENTS
(CONTINUED)

PAGE

C.    The Court Should Affirm The District Court's Order Because There Is No Evidence To Show A Prima Facie Case Of Discrimination ...................................................20

    1.    There Is No Evidence Vertex Denied Mr. Qin's Promotion Because He Is Chinese .........................20

    2.    Mr. Qin Cannot Point To Concrete Evidence To Prove Vertex Terminated Him Because He Is Chinese....................22

D.    The Court Should Affirm The District Court's Order Because There Is No Evidence To Prove Pretext Of Discrimination..............24

E.    The Court Should Affirm The District Court's Order On Retaliation.......................................................28

    1.    The Court Should Affirm Because Mr. Qin Waived Any Challenge To The Issue Of Pretext For The Retaliation Claim ...................................................29

    2.    Mr. Qin's Questions Are Not Protected Activity....................33

    3.    Mr. Qin's Questions Have No Causal Connection To A Material Adverse Action.........................................35

    4.    Mr. Qin's March 31, 2019 Email Cannot Support A Retaliation Claim ...................................................38

    5.    The Court Should Affirm The District Court's Order Because There Is No Evidence To Show Pretext For Retaliation.......................................................39

VIII.  CONCLUSION................................................39

I.    CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK ...............................41

II.    CERTIFICATE OF SERVICE................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agarwal v. Regents of University of Minnesota*,
788 F.2d 504 (8th Cir. 1986)....................................................19, 21

*Alers v. City of Philadelphia*,
919 F. Supp. 2d 528 (E.D. Pa. 2013).......................................15

*Alvarez v. Royal Atl. Developers, Inc.*,
610 F.3d 1253 (11th Cir. 2010).............................................27, 30

*Anderson v. Consolidated Rail Corp.*,
297 F.3d 242 (3d Cir. 2002)....................................................17, 18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................12

*Billet v. CIGNA Corp.*,
940 F.2d 812 (3d Cir. 1991)....................................................26

*Brown v. Div. of Youth & Faily Servs.*,
580 Fed. Appx. 96 (3d Cir. 2014) ...........................................30

*Carvalho-Grevious v. Del. State Univ.*,
851 F. 3d 249 (3d Cir. 2017)..........................................28, 30, 31, 32

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................12

*Clark Cty. Sch. Dist. V. Breeden*,
532 U.S. 268 (2001)................................................................36

*Conde v. Atty. Gen. of U.S.*,
286 Fed. Appx. 787 (3d Cir. 2008) .........................................31

*Connelly v. Lane Constri. Corp.*,
809 F. 3d 780 793 (3d Cir. 2016)............................................36

i

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*,
555 U.S. 271 (2009)......................................................................33

*Curay-Cramer v. Ursuline Acad., Wilmington*,
450 F. 3d 130 (3d Cir. 2006)......................................................33

*Daniels v. Sch. Dist. Of Phila.*,
776 F. 3d 181 (3d Cir. 2015)......................................................35

*Dasaro v. County of Monmouth*,
832 Fed. Appx. 788 (3d Cir. 2020) ..........................................31

*Doe v. C.A.R.S. Prot. Plus, Inc.*,
527 F.3d 358 (3d Cir. 2008).......................................................25

*Early v. U.S. Life Ins. Co.*,
222 F. Appx. 149. (3d Cir. 2007) ..............................................31

*Espinoza v. Dep't of Corrr.*,
509 Fed. Appx. 724 (10th Cir. Feb. 4, 2013)......................19, 21

*Family Civ. Liberties Union v. N.J. Dep't of Children 7 Families, Div.
of Child Prot. & Permanency*,
837 Fed. Appx. 864 (3d Cir. 2020) ..........................................30

*Fuentes v. Perskie*,
32 F.3d 759 (3d Cir. 1994)..........................................25, 26, 27, 32

*Furnco Construction Corp. v. Water*,
438 U.S. 567 (1978).....................................................................20

*Gambino v. Morris*,
134 F.3d 156 (3d Cir. 1998).......................................................33

*Glanzman v. Metropolitan Management Corp.*,
391 F. 3d 506 (3d Cir. 2004)......................................................19

*Godwin v. Pa. DOT*,
No. 22-1416, 2023 U.S. App. LEXIS 10899 (3d Cir. 2023)............36

*Jones v. School District of Philadelphia*,
198 F. 3d 403 (1999)..............................................................14, 15

*Keir v. F. Lackland & Sons, LLC*,
   72 F. Supp. 3d 597 (E.D. Pa. 2014).....................................................36

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993)..........................................................29, 30

*Lie v. Ashcroft*,
   396 F. 3d 530 (3d Cir. 2005).............................................................30

*Liptok v. Bank of Am.*,
   773 Fed. Appx. 97 (3d Cir. 2019) ......................................................30

*Liu v. Att'y Gen. U.S.*,
   399 Fed. App'x 736 (3d Cir. 2010) ....................................................31

*Makky v. Chertoff*,
   541 F. 3d 205 (3d Cir. 2008).............................................................20

*Martinez v. Rapidgm, Inc.*,
   290 F. App'x 521 (3d Cir. 2008).......................................................37

*McCann v. Astrue*,
   293 F. App'x 848 (3d Cir. 2008).......................................................17

*Meritor Sav. Bank v. Vinson*,
   477 U.S. 57 (1986)..................................................................13, 15

*Mimi Ma. V. Westinghouse Elec. Co.*,
   559 Fed. Appx. 165 (3d. Cir. 2014).................................................26, 27

*Moss v. Pennsylvania*,
   838 Fed. Appx. 702 (3d Cir. 2020) ...................................................30

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002).......................................................................17

*Nichols v. Bennett Detective & Protective Agency, Inc.*,
   245 Fed. Appx. 224 (3d Cir. 2007) ...................................................28

*Nitkin v. Main Line Health*,
   67 F.4th 565 (3rd Cir. 2023) .........................................15, 17, 22, 32

iii

*O'Connor v. City of Newark,*
  440 F.3d 125 (3d Cir. 2006) ............................................................17

*Oncale v. Sundowner Offshore Servs., Inc.,*
  523 U.S. ...........................................................................................16

*Orsatti v. N.J. State Police,*
  71 F.3d 480 (3d Cir. 1995) ..............................................................12

*Paske v. Fitzgerald,*
  785 F. 3d 977 (5th Cir. 2015) ..........................................................22

*Ray v. Pinnacle Health Hospsc., Inc.,*
  416 Fed. Appx. 157 (3d Cir. 2010) ..................................................28

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.,*
  142 F.3d 639 (3d Cir. 1998) ............................................................22

*Singletary v. Mo. Dept. of Corrs.,*
  423 F.3d 886 (8th Cir. 2005) ...........................................................16

*Tirk v. Dubrook, Inc.,*
  673 Fed. Appx. 238 (2016) ..............................................................36

*U.S. v. Pelullo,*
  399 F. 3d 197 (3d Cir. 2005) .....................................................29, 30

*U.S. v. Reynolds,*
  374 Fed. Appx. 356 (3d Cir. 2010) ..................................................31

*U.S. v. Roth,*
  413 F. App'x 439 (3d Cir. 2010) ......................................................31

*U.S. v. Scott,*
  266 F. App'x 206 (3d Cir. 2008) ......................................................31

*United States v. Albertson,*
  645 F.3d 191 (3d Cir. 2011) ............................................................33

*United States v. Andrews,*
  681 F. 3d 509 (3d Cir. 2012) ...........................................................33

*United States v. Boney*,
    2022 U.S. App. LEXIS 34040 (3d Cir. 2022)...................................................30

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013)............................................................................................30

*Verma v. Univ. of Pennsylvania*,
    533 F. App'x 115 (3d Cir. 2013)........................................................................38

*Walker v. Centocor Ortho Biotech, Inc.*,
    558 Fed. Appx. 216 (3d Cir. 2014) ...................................................................23

*Watson v. Eastman Kodak Co.*,
    235 F.3d 851 (3d Cir. 2000)...............................................................................11

*Young v. City of Phila. Police Dep't*,
    651 Fed. Appx. 90 (3d Cir. 2016) ................................................................30, 31

## I.      JURISDICTIONAL STATEMENT

The District Court had federal question jurisdiction over Mr. Qin's federal claim under 28 U.S.C. § 1331 and supplemental jurisdiction over Mr. Qin's state-law claims under 28 U.S.C. § 1367(a).  This Court has appellate jurisdiction under 28 U.S.C. § 1291 because Mr. Qin appeals from a final order of the United States District Court for the Eastern District of Pennsylvania.

## II.      STATEMENT OF RELATED CASES

There are no cases or proceedings related to this appeal pending before this Court or any other court or administrative agency.

## III.      COUNTER-STATEMENT OF THE ISSUES PRESENTED

1.      Whether the District Court properly granted Vertex's Motion for Summary Judgment on Mr. Qin's hostile work environment claim because the alleged conduct was neither severe nor pervasive such that it altered the terms and conditions of his employment.

2.      Whether the District Court properly granted Vertex's Motion for Summary Judgment on Mr. Qin's disparate treatment claims based on race and national origin under a direct evidence theory because there is no evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion.

3.      Whether the District Court properly granted Vertex's Motion for Summary Judgment on Mr. Qin's disparate treatment claims based on race and national origin under an indirect evidence theory because there is no evidence that

1

would allow a jury to find an inference of discrimination or that Vertex's reasons for its actions were pretext for discrimination.

4.    Whether the Court should affirm the District Court's Order on Summary Judgment for Mr. Qin's retaliation claim because he waived any challenge to pretext on the retaliation claim by not briefing the retaliation pretext issue.

5.    Whether the District Court properly granted Vertex's Motion for Summary Judgment on Mr. Qin's retaliation claim because there is no evidence that would allow a jury to find Mr. Qin's complaints of discrimination have a causal connection to an adverse action or were the but-for cause of any adverse employment action or that Vertex's reasons for its actions were pretext for retaliation.

## IV.    COUNTER-STATEMENT OF THE CASE

Vertex is a software development company that provides tax compliance solutions to customers worldwide. (A0111.) In 2000, Vertex hired Mr. Qin as an Enterprise Software Architect.[1] (A00034.) The Enterprise Software Architect job

---

[1] Architects formulate technological solutions for software issues that arise during product development. (A0280.) The work that an Architect has depends on how they engage with product teams and software engineers. (A0280-0281; A0305-0307.) Many Architects develop an expertise or specialty so they develop a reputation as the "go-to" Architect when a particular issue arises. (A0281.) Some Architects may develop an expertise in coding, while others may develop one in data. (A0281). Architects also find work by developing product knowledge. (A0280-0281, 0305-0307.)

description states that the position requires fifteen or more years' experience in software systems development.[2]  (A0321.)

## A.  Vertex Switched Management Models To Emphasize Concrete Deliverables and Employee Accountability

Before 2018, Vertex operated under the "Advantage Vertex," or "AV" management model.  (A0111.)  The AV model was decentralized and non-traditional.  (A0111; 0845.)  It allowed employees to select their own "sponsors." (A0111.)  Sponsors delivered performance results, recommended sponsorees for promotions, and acted in roles traditionally associated with "supervisors" even if the sponsor was not directly managing or directing the day-to-day work of the employee. (A0111.)  Mr. Qin's sponsor Ed Read, Director of Finance, did not work with Mr. Qin day-to-day or manage his responsibilities.  (A0391.)  In 2018, Vertex began pivoting to the more traditional "Zone to Win" or "ZTW" model, where Vertex's management structure shifted to be results oriented and performance management emphasized concrete deliverables and accountability for individual contributors. (A0111-0112, 0280-0281.)  The ZTW model established accountability for managers and increased performance accountability for employees reporting to

---

[2] Mr. Qin characterizes this as an "Entry-level position" without citing any evidence Vertex characterized the position as such. (Appellant's Opening Brief ("AOB"), at 7.)

3

those managers. (A0111.) Vertex used the phrase "Winning Way" to describe this new emphasis. (A1146, 1158-1159.)

**B.    Mr. Qin Spent Most Of His Career Working On Exploratory Projects—Not Formal Vertex Initiatives**

Across both management models, Mr. Qin spent substantial time working on exploratory work rather than engaging in formal Vertex initiatives. (A0084, 0269-0270, 0381-0384, 0496-0497, 0116-0118.)    In 2014, Mr. Qin received an email from Rick Harter, Mr. Qin's manager from 2011 through February 2019, saying "[w]e need to get you more involved in opportunities where your ideas can be implemented. You will also have to jump into some work that is more related to the needs as expressed by the strategy teams . . ." (A0496-0497.) Despite that, from 2014-2017, Mr. Qin worked on an informal, exploratory project, the PAM Library. (A0084, 0116-0118, 0268-0269.)[3] Vertex never adopted Mr. Qin's exploratory PAM Library project, yet it was the only project Mr. Qin could identify as an "accomplishment" over his last five years with the company. (A0277.) On August 24, 2017, Mr. Qin emailed Mr. Harter, expressing his intent to spend time "exploring

---

[3] As of March 7, 2016, Mr. Qin had read a document from Vertex's Chief Tax Office ("CTO") dated September 2013, explaining why the PAM library was not a viable offering for Vertex. (A0381-0384, 0448-0449, 0113, 0123-0126.) Mr. Qin nevertheless worked on the PAM library until July 19, 2017, when the Commercial Market Strategy Team ("CMST") informed Mr. Qin it would not be recommending the project. (A0269-0270, 0113, 0115-0118.)

4

new tax technologies[,]" leading Mr. Harter to say "let's get you more activities that can connect to current Vertex efforts." (A0274-0276, 0503-0504.)[4]

In February 2018, Mr. Harter told Ed Read, Mr. Qin's sponsor, that Mr. Qin would need to be "fully engaged this rating period" to get a promotion. (A0113-0114, 0132-0133.) Mr. Qin spent most of the year submitting ideas to Vertex's equivalent of an "idea box[,]" Bright Ideas. (A0340-0341.)[5] On October 19, 2018, Mr. Qin emailed Mr. Harter to say he had "no firm [work] commitments presently." (A0237-0239, 0505-0507.)

In October 2018, Mr. Qin asked Mr. Harter if the reason Mr. Qin had not received promotions was because he is Chinese. (A0395.) Mr. Harter responded "No." (A0394-0395.)[6] There is no evidence in the record Mr. Qin pursued the topic any further with Mr. Harter or anyone else. Two months later, on December 13, 2018, Mr. Qin met with Ms. Falco because he had questions after watching a workplace harassment video. (A0401-0402, 0533-0534, 0647-0648.) During the meeting, Mr. Qin asked Ms. Falco about Vertex's reporting procedures. (A0242, 0401-0402, 0533-0534.) Mr. Qin discussed seeing how President Trump was acting

---

[5] From August 27, 2018, through March 29, 2019, Mr. Qin submitted eleven ideas, none of which Vertex adopted. (A0340-0342, 0344, 0348-0365, 0368-0369, 0371-0378, 0478) He admitted that some of these idea related to the PAM Library, which he had already been told is not viable. (A0352.)

[6] There is no evidence that anyone else knew about Mr. Qin's question to Mr. Harter.

in the news toward Chinese people. (A0398, 0534.) Ms. Falco asked Mr. Qin whether he had anything to report. (A0242, 0398.) Mr. Qin said no. (A0242, 0398.)[7] Mr. Qin did not say he had any problems with the way anyone had treated him, or any employment actions taken toward him. (*See id.*)

### C.     Ms. Kurtz Deferred The Decision On Mr. Qin's Promotion

In October 2018, Mr. Qin's sponsor, Mr. Read, recommended Mr. Qin for a promotion. (A1170-1171.) In November 2018, one month after Mr. Qin had asked Mr. Harter the question about previous promotions, Mr. Harter approved Mr. Qin's promotion request. (A0847). On December 12, 2018, Jennifer Kurtz, Chief Technology Officer, received an email asking her to approve Mr. Qin's promotion. (A0281). The request confused Ms. Kurtz: she was not aware of any accomplishments in 2018 for Mr. Qin or contributions he made to Vertex's major products that would warrant a promotion. (*Id.*) On December 14, 2018, Ms. Kurtz emailed Mr. Harter, saying she needed to better understand Mr. Qin's contributions before approving the promotion request. (A0131). Ms. Kurtz deferred the promotion decision until after the yearly-review calibration process. (A0281.)[8]

---

[7] There is no evidence anyone else knew about Mr. Qin's conversation with Ms. Falco.

[8] Vertex's calibration process comprises of teams of leaders in a specific function area of the organization that evaluates employees' performance and their reviews and ratings to ensure equity and consistency. (A0790)

**D.    Mr. Qin Received "Usually Meets Expectations" Rating, A PIP, And Is Not Promoted Because He Was Not Fully Engaged In Formal Vertex Strategic Initiatives**

Vertex's calibration process is comprised of teams of leaders in a specific function area of the organization that evaluate employees' performance and their reviews and ratings to ensure equity and consistency. (A0294.)[9] The calibration team that evaluated Mr. Qin's review was Jen Kurtz, Lois Reynolds, Norm Stahlheber, Nicole Sakowitz, and Andrea Falco. (A0295.)  From November 26, 2018, through December 20, 2018, managers were able to assign employees' ratings. (A1158-1159.)    During that time, Mr. Harter assigned Mr. Qin a "Strong Contributor" rating.  (A0296.)  During the calibration process, which began on January 4, 2019, the calibration team changed Mr. Qin's "Strong Contributor" rating to "Usually Meets Expectations" because of Mr. Qin's struggle to engage in formal projects. (A0296, 0302, 0112.)  As the management structure's shift took hold during the calibration process, Mr. Qin's failure to become engaged in formal Vertex projects became apparent to his superiors.  (A0476-0477, 0793-0794.)  While Mr. Harter initially rated Mr. Qin as "Strong Contributor" he agreed with the calibration

___

[9] The schedule for the 2018 performance management process was as follows: November 5, 2018 (Performance Management system available for employees to enter self-evaluation and select feedback providers); November 26, 2018 (Performance Management Sponsor/Peer feedback and self-evaluation are completed); December 20, 2018 (Managers complete evaluation and Performance rating in system); January 4, 2019 (Calibration meetings begin). (A1158-1159.)

7

team's decision to change the rating. (A0296; 0861-062.) Mr. Harter testified that he was not aware of any strategic initiatives in which Mr. Qin was engaged at the time of Mr. Qin's rating. (A0856.)

The calibration team also assigned Mr. Harter himself, who is white, a Usually Meets Expectations rating. (A0282.) Fred Yawe was originally assigned a "Usually Meets Expectations Rating," but that rating was changed to "Strong Contributor" by the calibration team. (A0531-0532). Fred Yawe, who had just started working with Vertex in 2018, worked on Vertex's Cloud product, which was part of the Transformation Zone, a key priority area for the company. (A0532.)[10] After the calibration team spoke with the Transformative Zone, it determined Fred Yawe was making appropriate contributions so that a "Usually Meets Expectations" rating was improper. (A0532.)

Based on the calibration team's recognition that Mr. Qin was not sufficiently engaged in formal Vertex projects, Ms. Kurtz, in consultation with Ms. Falco and

---

[10] In 2018, Vertex hired Mr. Yawe to fill a particular niche at Vertex as the company transitioned focus from "on premises" services and software to "cloud" services and software. (A0283.) Vertex recognized a transition to the "cloud," which refers to offering software that is primarily not stored on local computers and servers at the customer's location but elsewhere and delivered over the internet. (A0283-4.) Vertex hired Mr. Yawe as a cloud architect. (A0284.) Vertex wanted to bring cloud architecture subject matter expertise to the software teams, which only had on-premise expertise. (*Id*.) Mr. Yawe's expertise in and knowledge of cloud architecture allowed him to fill that role. (*Id*.)

8

Ms. Sakowitz, decided to place Mr. Qin on a PIP. (A0283.) In February 2019, Ms. Kurtz also denied Mr. Qin's promotion request because he was not sufficiently engaged. (A0281.) On February 8, 2019, Mr. Harter met with Mr. Qin to discuss his review and explain how Mr. Qin needed to spend more time on formal Vertex projects. (A0112, 0296, 0302, 0456.) Mr. Harter told Mr. Qin Vertex would place Mr. Qin on the PIP. (A0476-0477, 0492-0493.) Mr. Harter departed the Company and Mr. Stahlheber stepped in to temporarily assume the management of Mr. Qin and other architects. (A0794.) Mr. Qin provided input into the goals for his PIP during February 2019 and March 2019 as the PIP was being drafted. (A0247-248, 0287, 0520.) Mr. Qin raised no complaints at the time of his performance review nor when he was told he would be placed on a PIP and worked together with Mr. Stahlheber on the PIP content. (*Id.*)

### E.   Mr. Qin Complained About A Colleague's Comments In His Review And Vertex Removed The Comment

On March 31, 2019, Mr. Qin emailed Ms. Falco and Mr. Stahlheber, who was then supervising the architects after Mr. Harter's departure in February 2019, expressing his plan to deliver the signed PIP to Mr. Stahlheber and execute it immediately. (A0650; 1080.) In this email, Mr. Qin also claimed that he believed statements in his 2018 review (which at this point had been provided to Mr. Qin a month and a half before) were Chinese stereotypes. (A0414, 0649-0650.) Mr. Qin's claim regarding Chinese stereotypes referred only to comments from John Hart, a

coworker whom Mr. Qin solicited to write a review. (A0249-0250, 0409, 0411, 0415, 0679-0650, 0708-0712.)   Mr. Hart had no supervisory or decision-making authority over Mr. Qin. (A 0251-253.) Mr. Qin could not recall ever working on a project with Mr. Hart. (A0251-0253.) Mr. Qin took umbrage with Mr. Hart's observation that Mr. Qin was "passive" and "overly reliant upon others for direction" and comments about "laughter" and "recoil[ing]". (A0252, 0409, 0708-0712.) Mr. Qin asked Mr. Hart about Mr. Hart's comments in his (Mr. Qin's) review, and Mr. Hart said there were "cultural differences." (A0917.) Mr. Hart meant Vertex's culture and how the company was "going towards a more results-oriented kind of approach in managing their teams." (A1146.) He meant "nothing beyond" the organization's shift in approach. (A1145.) Mr. Hart testified his comments in Mr. Qin's review had nothing to do with Mr. Qin being Asian and Chinese. (A1147) Mr. Hart considered Mr. Qin to be a friend. (*Id*.) Mr. Qin told Ms. Falco he wanted Mr. Hart's comments removed from the review. (A1002, 1005.)   Ms. Falco investigated Mr. Qin's complaint, which included interviewing Mr. Hart. (A0969, 0996, 1001.) Ms. Falco removed the comments because they made Mr. Qin upset and were not central to Mr. Qin's performance review overall. (A1002.) Indeed, Mr. Hart and Mr. Qin did not even work together in 2018, and he only provided the review because Mr. Qin solicited it. (A0252-0253). Mr. Qin's "Usually Meets Expectations" rating stood independent of Mr. Hart's comment. (A0529-0530.) Ms.

Falco did not conclude that Mr. Hart discriminated against Mr. Qin or that his comments were racial stereotypes or discriminatory.  (A0537, 1002.)

### F.    Mr. Qin Was Not Effective On The PIP As He Failed To Engage With A Formal Vertex Project

Mr. Qin's PIP was straightforward: he identified three Vertex projects he thought he could add value to.  (A0247-0248, 0287, 0520.)  His task was to become engaged with one of the self-identified projects by the PIP's end.  (*Id.*)  The PIP period was April 1, 2019, through May 3, 2019.  (*Id.*)  Mr. Qin signed the PIP on April 2, 2019.  (*Id.*)  By May 3, 2019, Mr. Qin had not engaged in any projects.  (A0289-0290, 0432-0433, 0718-0721.)  Mr. Stahlheber and Ms. Falco extended the PIP by two weeks.  (A0289-0290, 0432-0433, 0718-0721.)  On May 6, 2019, Mr. Qin emailed Mr. Stahlheber noting, "I put some thoughts on how to seek a better outcome than the past 5 weeks, which ***admittedly had not been effective***."  (A259-0260, 0547-0548.) (emphasis added).  Mr. Qin did not engage in a formal Vertex project.  (A0290-0291, 0522-0523, 0525.)  Thus, on May 16, 2019, Vertex terminated Mr. Qin's employment (A0290-0291, 0522-0523, 0525.)

## V.    STANDARD OF REVIEW

This Court's review of a summary judgment order is plenary.  *See Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000).  This Court must determine whether the record, when viewed in a light favorable to the appellant, shows there is no genuine issue of material fact, and that appellee was entitled to summary

judgment. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The moving party need only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323, 325 (1986). The burden then shifts to the non-moving party to point to specific evidence—as opposed to mere allegations, general denials, or vague statements—establishing a genuine issue for trial. *Id.* at 324. If the non-moving party fails to make that showing, the court must enter summary judgment against it. *Celotex*, 477 U.S. at 322-23. To defeat a motion for summary judgment, a party must "point to concrete evidence" in the record; unsupported assertions, conclusory allegations or mere suspicions cannot overcome a motion for summary judgment. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). The same is true on appeal: "[a]ll assertions of fact in [appellate] briefs must be supported by a specific reference to the record." LAR 28.3(c).

## VI.    SUMMARY OF ARGUMENT

This Court should affirm the District Court's entry of summary judgment for four reasons. *First*, the District Court correctly found the purported harassing behavior is not actionable. Mr. Qin relies on three comments and a compilation of

alleged individual adverse actions that are time-barred with no connection to his race or national origin. That evidence does not demonstrate Mr. Qin was subject to conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986). *Second*, the District Court properly found there is no direct evidence of discrimination. A peer's comment about "cultural differences" is not evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching an adverse decision. *Third*, the District Court properly found there is no indirect evidence of discrimination. Vertex did not promote Mr. Qin and terminated his employment because it perceived him to be insufficiently engaged in formal Vertex projects. Mr. Qin cannot prove a *prima-facie* case because the purported comparator was engaged on Vertex's flagship cloud product. The record has no evidence from which a reasonable juror could otherwise draw the requisite inference of discrimination. There is also no evidence of pretext: Mr. Qin points to no evidence that could show any of the decisionmakers harbored a discriminatory animus or did not actually perceive Mr. Qin to lack engagement in strategic Vertex initiatives. *Fourth,* the Court need not consider the merits of the retaliation claim. Mr. Qin abandoned his challenge to the District Court's finding on pretext for the retaliation claim by not briefing it. Thus, even if the court agrees with Mr. Qin's arguments on causation for Mr. Qin's *prima facie* case, the Court should affirm the retaliation claim.

13

Nevertheless, the retaliation claims also fail on the merits. There is no causation for the promotion-denial theory because the decisionmaker, Ms. Kurtz, did not know about any complaint. There is also no causation for the remaining theories because over one month lapsed between each alleged protected activity and material adverse action, and the record is otherwise devoid of antagonism or any other evidence to show causation. As for pretext, the record lacks sufficient evidence for a jury to find Vertex's reasons are false and that retaliation was the but-for cause. The Court should affirm the District Court's Order.

## VII.   ARGUMENT[11]

### A.   This Court Should Affirm The District Court's Order Because The Alleged Conduct Did Not Create A Hostile Work Environment

There is no evidence that severe or pervasive conduct altered the terms and conditions of Mr. Qin's employment. Therefore, this Court should affirm summary judgment on Mr. Qin's hostile work environment claim.

In *Meritor Sav. Bank v. Vinson*, the United States Supreme Court held that the antidiscrimination provision of Title VII of the Civil Rights of 1964 ("Title VII") includes "conduct [that] has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive

---

[11] Mr. Qin brings claims under Title VII, Section 1981 of the Civil Rights Act of 1866, and the Pennsylvania Human Relations Act. Courts view these claims under the same framework and analyze them congruently. *Jones v. School District of Philadelphia*, 198 F. 3d 403, 410 (1999).

working environment." *Id.* at 65. The Court defined the standard as whether it was "sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id.* at 67.[12] The record includes three purported comments over Mr. Qin's eighteen-year period: (1) Jon Hart's review and his verbal comment about "cultural differences" (A1128-1129; 1145-1146); (2) Robert Norton (who has no involvement in the case) saying "why don't you go back to China if the technology is so advanced" (A04444); (3) and the "China Man" comments Mr. Qin says he heard at an unspecified time by unidentified speakers at some point over his eighteen-year career. (A0245-0246; 0444-0445.) These allegations cannot prove severe and pervasive conduct for three reasons. *First*, three incidents over eighteen years is not sufficiently frequent as a matter of law to show severe and pervasive conduct.[13] *Second*, Mr. Hart's comments about "cultural differences[,]" "passive[,]" and "recoil" are not facially discriminatory and cannot support a hostile work environment claim.[14]  *Third*, Mr. Qin's allegations regarding the "China Man"

---

[12] In *Faragher v. City of Boca Raton*, the Supreme Court recited the Court's jurisprudence on hostile work environment claims, explaining "these standards for judging hostility are sufficiently *demanding* to ensure that Title VII does not become a general civility code." *Id.* at. 788 (emphasis added). The Court added "we have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Court of Appeals have heeded this view." *Id.*

[13] *See Nitkin v. Main Line Health*, 67 F.4th 565, 571 (3rd Cir. 2023) (explaining seven comments over three-and-a-half years, "indicates that [the] actions were not severe or pervasive harassment.")

[14] *See e.g., Alers v. City of Philadelphia,* 919 F. Supp. 2d 528, 546 (E.D. Pa. 2013) (finding facially neutral comments could not prove severe and pervasive threshold);

comment cannot support a severe and pervasive showing because the allegations regarding that comment (from an unidentified person) are vague, devoid of any details that would let a fact finder consider the circumstances, expectations, and relationships of that workplace, as is necessary when considering if there is a hostile work environment.[15] *Finally*, Mr. Norton's "go back to China" comment cannot support a hostile work environment claim because it is an isolated remark, not physically threatening nor humiliating, and not "extreme."[16] There is also no evidence Mr. Norton made the comment within limitations period. Mr. Norton is absent from the purported conduct within the limitations period, so the comment cannot be part of a continuing violation theory.

Mr. Qin contends the Court erred because it did not consider fourteen years of promotion denials in the harassment analysis. (AOB at 33.) His contention is wrong. "Discrete discriminatory acts that are actionable on their own may not be aggregated under a continuing violation theory" to establish a hostile work

---

*see also Singleatary v. Mo. Dept. of Corrs.*, 423 F.3d 886, 893 (8th Cir. 2005) ("[T]he conduct must 'have a racial character or purpose to support a hostile work environment claim.").

[15] *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. at 81. ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships . . .").

[16] *See Perry* v. Harvey, 332 F. App'x 728, 732 (3rd Cir. 2009) ("[t]he mere utterance of an ethnic or racial epithet which engenders offensive feelings in a[n] employee does not [violated Title VII].")

environment.[17]  A failure to promote is a discrete act that is individually actionable.[18]

Mr. Qin's failure to sue within the limitations period for the purported promotion

denials before 2019 precludes him from recovering under the guise of a hostile work

environment.  *See Nat'l. R.R. Passenger Corp.*, 536 U.S. at 114.  Also, Mr. Qin

adduced no evidence regarding the circumstances of earlier promotion denials,

asserting only vague allegations, which cannot support a hostile work environment

claim.  *Nitkin*, 67 F. 4th at 571.[19]  Mr. Qin cannot prove a hostile work environment

claim.

### B.    The Court Should Affirm The District Court's Order Because There Is No Direct Evidence Of Discrimination

To prove individual disparate treatment under a direct evidence theory, Mr.

Qin "must demonstrate that the decision makers placed substantial negative reliance

on an illegitimate criterion in reaching their decision."  *Anderson v. Consolidated*

---

[17] *See McCann v. Astrue*, 293 F. App'x 848, 850 (3d Cir. 2008) (finding the plaintiff could not aggregate promotion denials from 1983 through 2005 to establish a hostile work environment.); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory acts starts a new clock for filing charges alleging that act.")

[18] *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (*citing Nat'l R.R. Passenger Corp.*, 536 U.S. at 114.)

[19] Other than the fact he was not receiving promotions, Mr. Qin testified he could "not recall" any other evidence to show the previous promotion denials were the result of a bias against him because he is Chinese or Asian. (A0272).

*Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002). In doing so, Mr. Qin faces "a high hurdle." *Id*. The District Court properly found Mr. Qin did not clear that hurdle.

Mr. Qin's direct evidence theory includes one comment: Mr. Hart told Mr. Qin that Mr. Hart's review was because of "cultural differences." (AOB at 19.) This comment cannot support a direct evidence theory for two reasons. *First*, the "cultural differences" comment is not facially discriminatory. Mr. Qin's testimony about the comment is this: "[t]he review roughly [Mr. Hart] indicated is more or less based on or due to the cultural differences." (A0917.) Mr. Qin "could not recall any details of that conversation [with Mr. Hart]." (*Id.*) It is undisputed that Mr. Hart was not referring to Mr. Qin's race or national origin when he referenced differences in culture. (A1145-1147.) Mr. Hart testified, "Vertex has its own culture . . . and that part of the new culture was the winning way. I didn't see [Mr. Qin] complying with those principles in delivering to the organization to meet the goals of the winning way." (A1146.) In referencing the differences in culture to Mr. Qin, Mr. Hart testified, "I knew [Vertex] was going towards a more results oriented kind of approach in managing their teams. . . [t]hat's where the question of cultures comes up . . . there was nothing beyond that." (A1146). There is no record evidence from which a reasonable juror could conclude Mr. Hart was referring to Mr. Qin being Chinese or Asian rather than the organization's culture. But even if there was such evidence, both the Eighth Circuit and Tenth Circuit have held comments of "cultural

differences" is insufficient evidence to support discrimination claims under an indirect evidence theory.[20]  It cannot meet the heighted standard for direct evidence claims.[21]  *Second*, Mr. Hart was not a decisionmaker (A0251-253; 283, 295),  the comment about "cultural differences" was not in the review (A0708-712), and there is no evidence the decisionmakers knew about the comment or that the comment was related to any adverse action.[22]  The language in the review itself says nothing about Mr. Qin's race or national origin.  (*Id*.)  To the extent Mr. Qin asserts Mr. Hart's "cultural differences" comment influenced Mr. Harter's review of him and caused a parade of horribles (*i.e.*, promotion denial, rating, performance improvement plan, and termination) the assertion is belied by the record.  Mr. Harter approved Mr. Qin's promotion and assigned him a Strong Contributor rating. (A0296, 0847.)  The calibration team disagreed with Mr. Harter's assessment, giving

---

[20] *Agarwal v. Regents of University of Minnesota*, 788 F.2d 504, 509 (8th Cir. 1986) ("[The] alleged reference to 'cultural differences' does not on its face evidence invidious discriminatory animus toward [the plaintiff]"); *see also Espinoza v. Dep't of Corrr.*, 509 Fed. Appx. 724, 734 (10th Cir. Feb. 4, 2013) (finding colleague's "comment that there were cultural differences" was insufficient to prove a discrimination claim).

[21] *Espinoza* explained the "cultural difference" comment could not support a discrimination claim because the plaintiff "did not present evidence on what [the colleague] meant by this statement, develop a factual record to demonstrate what the differences were, or explain how this comment established a basis for his belief of discrimination in this instance." *Espinoza*, 509 Fed. Appx. at 734.

[22] *Glanzman v. Metropolitan Management Corp.*, 391 F. 3d 506, 513 (3d Cir. 2004) ("statements made by non-decision makers or by a decision maker unrelated to the decisional process itself are not direct evidence.")

them both a "Usually Meets Expectations" ratings, and Ms. Kurtz denied the promotion after Mr. Harter approved it.  (A0112, 0282; 0296; 0302; 0456.)  Mr. Harter left Vertex before Mr. Qin's termination.  (A0453-0454, 0536.)  There is no connection between Mr. Hart's comments, Mr. Harter, and any decision-maker or adverse action.

### C.    The Court Should Affirm The District Court's Order Because There Is No Evidence To Show A *Prima Facie* Case Of Discrimination

To prove a prima facie case of discrimination, Mr. Qin must prove (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.  *Makky v. Chertoff*, 541 F. 3d 205, 214 (3d Cir. 2008).[23]  A factfinder could not find such an inference on this record.

### 1.    There Is No Evidence Vertex Denied Mr. Qin's Promotion Because He Is Chinese

Mr. Qin argues he can prove the discriminatory inference for his failure to promote claim because "Mr. Qin's earned promotion was later reversed because of the racially motivated negative performance review written by Mr. Hart."  (AOB

---

[23] *Furnco Construction Corp. v. Water*, 438 U.S. 567, 576 (1978) (explaining to create the inference of discrimination, the plaintiff must present evidence upon which a court can infer that if the "[employer's] actions remain unexplained, [] it is more likely than not that such actions were based on discriminatory criterion illegal under [Title VII].")

25.) This theory fails for four reasons. *First*, there is no evidence that Mr. Hart's comment in the review was "racially motivated" or otherwise discriminatory. The review does not mention Mr. Qin's race or national origin. (A0409-0410; 0708-0712.) Mr. Hart testified that when he mentioned culture to Mr. Qin, he was referring to Vertex's culture and how the company was becoming more results oriented. (A1146.) He also testified his comments in Mr. Qin's review had nothing to do with Mr. Qin's race or national origin. (A1147.) Further, referencing "cultural differences" does not by itself create the inference of discrimination under an indirect evidence theory as a matter of law.[24] *Second*, Mr. Qin's promotion was never "reversed." Mr. Harter approved Mr. Qin's promotion request. (A0127-0129, 0281-0282, 1061-1066.) Mr. Qin's request proceeded to the next level of authority for approval, Ms. Kurtz. (A0128-0129, 0281-0282, 1061-1066.) There is no evidence this was a different procedure used for any other promotional request. (*See id.*) Ms. Kurtz decided to defer the decision about Mr. Qin's promotion request until after the calibration process. (A0281-0282, 1045-1046.) She did so because she was not comfortable approving the request as she was not aware of any accomplishments that would warrant it. (A0281-0283, 1045-1046.) Her belief was well founded: ten months into 2018, on October 19, 2018, Mr. Qin confirmed in writing that he had no firm project commitments. (A0237-0240, 0506.) *Third*, there

---

[24] *See Agarwal*, 788 F.2d at 509; *Espinoza*, 509 Fed. Appx. at 734.

is no evidence Ms. Kurtz decided to defer the decision because of Mr. Hart's comment in the review. (A0281-0283, 1045-1046.) On the contrary, the calibration process did not start until January 4, 2019, so she would have had no reason to even seen Mr. Qin's review on December 14, 2018. (A0282, 1158-1159.) *Fourth*, that Mr. Harter agreed with Ms. Kurtz's decision to defer the promotion decision is irrelevant: Mr. Harter already approved the request, and it was up to Ms. Kurtz whether to approve the request and promote Mr. Qin. (A0127-0129, 0281-0283, 1061-1066.) At bottom, Mr. Qin's argument for finding a discriminatory inference for the failure to promote claim is rife with speculation and conjecture; he did not offer concrete evidence to prove this element of his claim.[25] He cites no authority where this court or any other has found a discriminatory inference under similar circumstances. The Court should affirm.

### 2. Mr. Qin Cannot Point To Concrete Evidence To Prove Vertex Terminated Him Because He Is Chinese

Mr. Qin provides one basis for an inference of discrimination for his termination: Fred Yawe, as a comparator. (AOB 27.) A plaintiff can show the discriminatory inference through comparators when "the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 645 (3d Cir. 1998).[26] The crux of Mr.

---

[25] *See Nitkin*, 67 F. 4th at 571.

[26] *Paske v. Fitzgerald*, 785 F. 3d 977, 984 (5th Cir. 2015) (explaining the plaintiff

22

Qin's comparator argument is Vertex treated Mr. Yawe better because it changed Mr. Yawe's rating from "Usually Meets Expectations to "Strong Contributor" while not doing likewise for Mr. Qin. (AOB 25.) This argument fails for two reasons. *First*, Mr. Qin misconstrues the comparator analysis. The comparator analysis focuses on the adverse action (here, termination) for Mr. Qin and the "dissimilar employment decision" for Mr. Yawe (*i.e.*, non-termination). Mr. Qin's comparator argument focuses on Vertex's decision for the performance rating—not his termination—and a rating is not an adverse employment action.[27] There is also no evidence Vertex terminated Mr. Qin because of his performance rating. After assigning Mr. Qin his "Usually Meets Expectations" rating, Vertex provided Mr. Qin with four months to engage in a project. (A0289-0290.) Vertex even allowed Mr. Qin to pick what projects he would try to engage with as part of the PIP process and extended his PIP to allow him more time to complete it. (A0287-0290.) Mr. Qin failed to engage with a formal Vertex project, and Vertex terminated him for that reason. (A0291, 526.) Mr. Qin's rating four months earlier does not create an inference for the termination.

     *Second*, Mr. Qin does not identify a similarly situated employee. To prove an

---

must show "his conduct that drew the adverse employment decision [was] nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.")

[27] *See Walker v. Centocor Ortho Biotech, Inc.*, 558 Fed. Appx. 216, 220 (3d Cir. 2014) ("a negative evaluation, by itself, is not an adverse employment action.").

inference of discrimination for his termination using comparators, Mr. Qin must identify a non-Chinese employee who engaged in similar conduct (did not become engaged in formal Vertex projects) but Vertex retained them.  The record is devoid of any such employee.  Two dispositive facts sink Mr. Qin's similarly situated argument as to Mr. Yawe: (1) Mr. Yawe had expertise in a niche area Vertex was focusing on and contributed to Vertex's flagship cloud product (A0283-4); (2) Mr. Qin did not contribute to Vertex's cloud product or otherwise make similar contributions to a flagship product; on October 19, 2018, Mr. Qin even acknowledged he had no project commitments.  (A0237-0240, 0505-0507.)  On the other hand, the calibration team was able to determine Mr. Yawe was engaged in meaningful projects, and there is no record evidence that Mr. Yawe was not. (A0531-0532.) There is no evidence from which a reasonable juror could conclude that the calibration team was doing anything besides what it was supposed to do: calibrating.  The calibration team ensured employees received ratings aligned with the organization's standards, particularly in light of the organization's shift to focus on results.  (A0294, 790, 1158-9.)   At bottom, the record lacks evidence showing Mr. Yawe was similarly situated to Mr. Qin, and Mr. Qin cannot create an inference of discrimination for that additional reason.

### D.    The Court Should Affirm The District Court's Order Because There Is No Evidence To Prove Pretext Of Discrimination

Even if Mr. Qin could prove a prima-facie case of discrimination, this Court

should affirm because Vertex offered a legitimate non-discriminatory reason for its action and no reasonable jury could find that reason is pretext for discrimination. Vertex did not promote Mr. Qin and terminated his employment because he was not sufficiently engaged in formal Vertex projects.  (A0283, 0291-0292.)  To survive summary judgment on pretext, Mr. Qin must point to evidence from which a "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  Mr. Qin cannot point to concrete evidence to support either.

To establish pretext under the first *Fuentes* method, "[Mr. Qin's] evidence rebutting [Vertex's] proffered legitimate reasons must allow a fact-finder reasonably to infer that each of [Vertex's] proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008).  Mr. Qin tries to prove pretext using this method by asserting the Court relied on "incorrect" information and his perceptions about his engagement with projects and the fairness of the PIP process. [28]  (AOB 27.)  Mr. Qin cannot prove pretext by relying on his

---

[28] There is no record evidence to support Mr. Qin's perception that he was engaged. The sole basis for Mr. Qin's belief is his statement "the Excise Tax project actually was adopted by Vertex, and Mr. Qin was assigned to work on it until the date of his

perceptions.[29] Mr. Qin's view of his engagement is not at issue; "what matters is the perception of the decision maker." *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991). *Mimi Ma. V. Westinghouse Elec. Co.* is instructive on this point. There, the employer terminated the plaintiff because she did not meet expectations and did not treat other employees with dignity and respect. *Mimi Ma. V. Westinghouse Elec. Co.*, 559 Fed. Appx. 165, 169 (3d. Cir. 2014). The plaintiff argued she proved pretext through the first method by presenting a "plethora of pretext evidence that contradicts the core of [the employer's] stated reason for firing her: poor performance and the failure to treat other employees with deference and respect." *Id.* at 170. This Court explained that such evidence was insufficient: it was limited to the plaintiff's own assertions that her supervisors incorrectly assessed her performance and misrepresented her interactions "and her own assertions that she was not disrespectful." *Id.*[30] The same reasoning applies here. Mr. Qin's own

---

termination." (AOB at 35) Mr. Qin testified he "did not recall" if Vertex adopted the Excise Tax project. (A0431.) The only Mr. Qin cites for that assertion is (1) an email on April 6, 2019, where Mr. Qin said he plans to work on the project (A1048); (2) the document Mr. Qin submitted to Vertex's idea box (A0431.); and (3) a calendar invitation Mr. Qin sent to colleague about it. (A1294.). None of those things demonstrate that Vertex adopted the projects or encouraged Mr. Qin to work on it.

[29] *See e.g.*, *Fuentes*, 32 F.3d at 765 ("the plaintiff cannot simply show that the employer's decision was *wrong or mistaken*, since the factual dispute at issue is whether discriminatory animus motivated the employer . . .")(emphasis added).

[30] In concluding that, the Court relied on Eleventh Circuit in *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs and, not the employee's beliefs and, to be blunt

assertions about his engagement or the fairness of the PIP process are irrelevant. Mr. Qin cannot use his own assertions to create factual disputes about the objective truth of his performance to overturn the District Court. Instead, he must point to evidence that Vertex's perceptions are not what Vertex says they are. He cannot do that. It is undisputed that Vertex perceived Mr. Qin to be insufficiently engaged in formal Vertex projects and did not promote him and terminated his employment for that reason. (A0281-0283, 0291-0292, 0526.) Mr. Qin cannot prove pretext through the first method.

Mr. Qin's effort to prove pretext through the second method fairs no better. A plaintiff can survive summary judgment by pointing to evidence from which a factfinder could reasonably "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. Mr. Qin tries to prove pretext using this method by again invoking Mr. Yawe. For the reasons explained in Section VII.C.2, Mr. Yawe is not a comparator. And even if he was, "[the] identification of one or two comparators may be sufficient at the prima facie stage of analysis, [but] it is not sufficient at the

---

about it, not reality as it exists outside the decision maker's head. The question is not whether it was really [plaintiff's] fault that assignments were not completed on time . . . or whether she was . . . rude to her colleagues and superiors . . . . The question is whether her employers were dissatisfied with her for these or other nondiscriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about [plaintiff] as cover for discriminating against her.")

pretext phase." *Ray v. Pinnacle Health Hospsc., Inc.*, 416 Fed. Appx. 157, 164 (3d

Cir. 2010)*; Nichols v. Bennett Detective & Protective Agency, Inc.*, 245 Fed. Appx.

224, 230 (3d Cir. 2007) (finding evidence of a single comparator insufficient to

prove pretext because "at the pretext stage [] the factual inquiry into the alleged

discriminatory motives of the employer has risen to a new level of specificity.")

The record is devoid of any evidence an invidious reason motivated Vertex's

decision.  No reasonable jury could find pretext here.

> ### E.    The Court Should Affirm The District Court's Order On Retaliation

To establish a *prima facie* case, Mr. Qin must show (1) he engaged in activity

protected by Title VII; (2) Vertex took an adverse employment action against him;

and (3) there was a causal connection between his participation in the protected

activity and the adverse employment action.  *Carvalho-Grevious v. Del. State Univ.*,

851 F. 3d 249, 256 (3d Cir. 2017).  If Mr. Qin does so, Vertex must offer a legitimate,

non-retaliatory reason for it's conduct.  (*Id.*)  Mr. Qin must then prove pretext by

demonstrating Vertex's proffered reason is false *and* that retaliation was the real

reason for the adverse employment action.  *Id.*  Mr. Qin challenges the District

Court's Order for retaliation on the basis it erred on protected activity and the causal

connection to establish a *prima facie* case.  (AOB 35-41.)  The Court need not reach

the merits of those arguments.  Vertex has offered a non-retaliatory reason for its

actions: Mr. Qin's insufficient engagement with formal Vertex projects and failure

to engage with any project through the PIP.  (A0281-0283, 0291-0292, 0526.)  The burden shifts back to Mr. Qin for the third stage; to prove pretext for retaliation.  Mr. Qin has not attempted to do so: his brief has no argument on pretext for his retaliation claim.  Thus, he waived any challenge to the Court's finding on the issue, and this Court should affirm on the retaliation claim.  Mr. Qin's arguments also fail on the merits.

### 1.    The Court Should Affirm Because Mr. Qin Waived Any Challenge To The Issue Of Pretext For The Retaliation Claim

Federal Rule of Appellate Procedure 28(a)(3)-(5) requires appellants to set forth the issues raised on appeal and present arguments in support of those issues in their opening briefs.  Fed. R. App. P. 28(a)(3).  An appellant's failure to identify or argue an issue in the opening brief constitutes a waiver on appeal.  *U.S. v. Pelullo*, 399 F. 3d 197, 221 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (declining to review issue on appeal when the appellants failed to identify it as an issue in the issue statement or provide an argument for it.)  Mr. Qin's brief does not identify the retaliation pretext standard, nor does it contend that the District Court erred in finding that he failed to meet it.  His efforts to fix this in his reply will fail, and the Court should affirm.

To succeed on a retaliation claim, plaintiffs must prove but-for causation; that

is, the plaintiff must show he would not have suffered an adverse employment action "but for" his protected activity. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). This Circuit has found *Nassar*'s requirement for "but-for" causation is synonymous with the plaintiff's ultimate burden at the pretext stage to show retaliation was "the real reason." *See Carvalho-Grevious,* 851 F. 3d at 258.[31] Mr. Qin did not address this pretext standard; the phrases "but for" or "retaliation was the real reason" are absent from his brief. There is no reference to retaliation pretext in the "Issues Presented" section of his brief. (AOB 3-4.) Thus, Mr. Qin abandoned his challenge, and the Court should affirm the District Court's Order on the retaliation claim for that reason.[32] Mr. Qin will likely try to fix his omission in his

---

[31] *Id.* ("Although this Court's . . . 'real reason' causation standard and the Supreme Court's "but-for" causation standard differ in terminology, they are functionally the same." ); *see also Young v. City of Phila. Police Dep't*, 651 Fed. Appx. 90, 95-96 (3d Cir. 2016) ("for a plaintiff to prevail at the pretext stage, he or she must produce evidence showing . . . retaliation for engaging in the protected activity was the real reason, or "but-for" cause, for its actions.").

[32] *See e.g.*, *Pelullo*, 399 F. 3d at 221 (finding appellant waived issue on appeal by failing to brief it); *Lie v. Ashcroft*, 396 F. 3d 530, 532 (3d Cir. 2005) (same); *Kost*, 1 F.3d at 183 (same); *United States v. Boney*, 2022 U.S. App. LEXIS 34040, at * 5 (3d Cir. 2022) (same); *Family Civ. Liberties Union v. N.J. Dep't of Children 7 Families, Div. of Child Prot. & Permanency*, 837 Fed. Appx. 864, 868 (3d Cir. 2020) (same); *Moss v. Pennsylvania*, 838 Fed. Appx. 702, 707 n. 2 (3d Cir. 2020) (same); *Liptok v. Bank of Am.*, 773 Fed. Appx. 97, 100 (3d Cir. 2019) (same); *Brown v. Div. of Youth & Faily Servs.*, 580 Fed. Appx. 96, 97 (3d Cir. 2014) (same); *Dasaro v. County of Monmouth*, 832 Fed. Appx. 788, 792 (3d Cir. 2020) (same); *U.S. v. Reynolds*, 374 Fed. Appx. 356, 359 (3d Cir. 2010) (same); *Liu v. Att'y Gen. U.S.*, 399 Fed. App'x 736, 738 n. 1 (3d Cir. 2010) (same); *U.S. v. Roth*, 413 F. App'x 439, 443 (3d Cir. 2010) (same); *Conde v. Atty. Gen. of U.S.*, 286 Fed. Appx. 787, 789 (3d Cir. 2008) (same); *U.S. v. Scott*, 266 F. App'x 206, 208 (3d Cir. 2008) (same); *Early*

reply by pointing to his opening brief's (1) causation analysis for the *prima facie* case and (2) pretext analysis for his discrimination claim.  Neither will do.

As an initial matter, Mr. Qin did not incorporate by reference his *prima-facie* causation argument or discrimination pretext argument into a retaliation pretext argument.  But even if he had, it would be insufficient.  The causation standards at the *prima-facie* case and pretext stages differ.  *See Carvalho-Grevious*, 851 F. 3d at 257.[33]  Mr. Qin's causation analysis lacks any reference to the but-for causation or "real reason" standard for pretext.  (AOB 38-42.)  He cannot rely on his *prima facie* case analysis because causation at the *prima facie* case stage is a different *issue* than causation at the pretext stage.  *See* Fed. R. App. P. 28(a)(3) (explaining appellants must identify and brief *each issue* on appeal.)   Likewise, the discrimination pretext question is different than the retaliation pretext question, making them different issues.  *Id.*  Indeed, the retaliation pretext standard is an "and" test, requiring the plaintiff to show that the employer's reasons are false *and* that retaliation was the real reason, while the discrimination pretext standard is an "or" analysis with no

---

*v. U.S. Life Ins. Co.*, 222 F. Appx. 149, 152 n. 4. (3d Cir. 2007) (same).

[33] *Id.* ("The onus is on the plaintiff to establish causation at two stages of the case: initially to demonstrate a causal connection as part of the *prima facie* case, and at the final stage of the *McDonnell Douglas* framework to satisfy her ultimate burden of persuasion by proving pretext.") *see also Young*, 651 Fed. Appx. 90, 95-96 ("the type of causation that must be shown at each point differs. . . [b]y contrast, to prove causation at the pretext stage, the plaintiff must show that [he] would not have suffered an adverse employment action 'but for' [his] protected activity.")

inquiry into whether *retaliation* was the real reason.[34]  Mr. Qin made no challenge to pretext for his retaliation claim, and his attempt to fix that omission in his reply will fail.

To the extent Mr. Qin blames his omission on the District Court because the District Court did not address the second pretext prong (*i.e.*, but-for causation) in its analysis on pretext for the retaliation claim, the argument fails for two reasons. *First*, the District Court explained "this Court's inability to find evidence of pretext when analyzing the discrimination claim naturally compels this Court to similarly find a lack of pretext with respect to this retaliation claim." (A 016.)  The Court already found that there was insufficient evidence to cast doubt on Vertex's stated reason (lack of engagement and failing the PIP), so Mr. Qin could not meet the first prerequisite for the retaliation pretext.  There was no need for the Court to proceed to the second prerequisite (*i.e.*, retaliation was the real reason.)  *Second*, regardless of the District Court's analysis, Mr. Qin is obligated to point to concrete evidence to prove every element of his claim.[35]  Mr. Qin cannot win on his retaliation claim without proving pretext.  By failing to even brief the issue, he cannot win on the

---

[34] *Carvalho-Grevious*, 851 F. 3d at 257*; Cf. Fuentes*, 32 F. 3d at 764 (holding a plaintiff can prove pretext by pointing to evidence that would allow a factfinder to "either" (1) disbelieve the employer's reasons "or" (2) believe an invidious discriminatory reason was more likely than not the reason.)
[35] *See Nitkin*, 67 F. 4th at 571.

claim.  The Court should affirm.[36]  Mr. Qin's arguments also fail on the merits.

### 2.    Mr. Qin's Questions Are Not Protected Activity

Mr. Qin asserts his questions to (1) Mr. Harter about whether he was not promoted because he was Chinese; and (2) Ms. Falco about Vertex's procedures are protected activity.  (AOB 35-28)  Not so.  "The opposition clause makes it 'unlawful . . for an employer to discriminate against any . . . employe[e]. . . because he has opposed any practice made . . . unlawful . . . by this subchapter.'"  *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009).  Because the statute does not define "oppose," the Supreme Court has explained the term carries its ordinary meaning: "'to resist or antagonize . . .; to contend against; to confront; resist; withstand,' Webster's New International Dictionary 1710 (2d ed. 1958)."  *Id.*; *see also Curay-Cramer v. Ursuline Acad., Wilmington*, 450 F. 3d 130, 137 (3d Cir. 2006) ("It is the objective message conveyed, not the subjective intent of the person sending the message, that is determinative.")

Here, the objective message of Mr. Qin's questions is just that: a question.  Mr. Qin was equivocal; he sought answers to things he expressed no opinion about.  He did not resist, antagonize, contend against, confront, resist, or withstand a

---

[36] While this Court has held in limited cases that the waiver rule yields in "extraordinary circumstances[,]" those cases involved criminal sentencing, which are circumstances irrelevant to those here. *See United States v. Andrews*, 681 F. 3d 509, 531 (3d Cir. 2012); *United States v. Albertson*, 645 F.3d 191, 195 (3d Cir. 2011); *Gambino v. Morris*, 134 F.3d 156, 170 (3d Cir. 1998).

discriminatory practice.  He did the opposite.  Ms. Falco asked Mr. Qin whether he wanted to report anything, and he said *no*.  (A0534.)  He also never told Mr. Harter that he thought he was treated differently based on his race, and did not object, challenge or otherwise pushback when Mr. Harter said no in response to his question (A0244, 0271-0282, 0394-0395.)   He was not participating in an ongoing investigation providing evidence to support a conclusion an individual discriminated against someone.  Mr. Qin cites *no case* where this Court or any other found questions like Mr. Qin's to be engaging in protected activity.[37]

Mr. Qin is inviting this Court to expand the definition of "oppose" past its ordinary meaning, applying it to circumstances where employees are not telling the employer they oppose anything or about a belief that someone acted improperly. Nothing prevented Mr. Qin from stating an opposition to Mr. Harter and Ms. Falco. Mr. Qin eventually did state an opposition in his email on March 31, 2019.  That email is devoid of any reference to Mr. Qin's previous questions to Mr. Harter and Ms. Falco.  (A0414, 0649-0650.)  Moreover, Mr. Qin had attended a workplace harassment training by the time he spoke to Ms. Falco and explicitly said no when she asked him if he had anything to report.  (A0533-0534.)  The Court should reject

---

[37] *Cf. Perry*, 332 F. App'x 728, 732 ("the employee's opposition to unlawful discrimination must not be equivocal.")

the invitation to expand the bounds of protected activity beyond individuals who oppose discriminatory activity or participate in procedures regarding same.

### 3.    Mr. Qin's Questions Have No Causal Connection To A Material Adverse Action

Even if the Court found Mr. Qin's questions were protected activity, there is no evidence to prove a causal connection to a material adverse employment action. As for Mr. Qin's question to Mr. Harter, there is no causation for three reasons. *First*, this Court's precedent requires plaintiffs to point to evidence that the individuals responsible for the adverse action knew about the protected activity to prove the causal element. *See Daniels v. Sch. Dist. Of Phila.*, 776 F. 3d 181, 196 (3d Cir. 2015). Two dispositive facts preclude a finding of a causal connection between Mr. Qin's October 2018 question and his promotion denial: (1) Ms. Kurtz was responsible for denying Mr. Qin's promotion request after Mr. Harter approved it (A0281-0282); (2) Ms. Kurtz did not know about Mr. Qin's question to Mr. Harter or any complaint from Mr. Qin. (A0283.) There is no evidence that anybody except Mr. Harter knew about Mr. Qin's October 2018 question. *Second*, Mr. Qin cannot rely on temporal proximity alone to prove the causal connection between his question to Mr. Harter (unknown date in October 2018) and Mr. Qin's promotion decision hold (December 14, 2019) and subsequent denial and performance rating (January -February 2019).

As an initial matter, the record is devoid of a specific date for when Mr. Qin asked Mr. Harter the question. That alone should preclude Mr. Qin on relying on temporal proximity by itself to prove causation.[38] But even if Mr. Qin complained on October 31, 2018, Mr. Qin cannot not rely on temporal proximity by itself to prove causation. *See Godwin v. Pa. DOT*, No. 22-1416, 2023 U.S. App. LEXIS 10899, at * 7 (3d Cir. 2023) (finding five weeks insufficient by itself to prove causation)[39]. Mr. Qin asks this Court to allow him to prove causation by relying on temporal proximity alone because Vertex acted against Mr. Qin at "the very first opportunity." (AOB 39.) Contrary to Mr. Qin's "first opportunity" theory, in November 2018, one month after Mr. Qin's question, Mr. Harter approved Mr. Qin's promotion request. (A0847.) This unravels Mr. Qin's theory. Beyond that, Mr. Qin is asking for a carve-out to the Supreme Court's holding—that temporal proximity must be "very close[40]" to establish causation by itself—based on his *speculation* Vertex acted at its first opportunity and could not have retaliated sooner. Such a carveout has no basis in the Supreme Court's jurisprudence or this Court's precedent. In *Connelly v. Lane Constri. Corp.*, 809 F. 3d 780 793 (3d Cir. 2016)

---

[38] *Keir v. F. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 617 (E.D. Pa. 2014) ("This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.")

[39] *Tirk v. Dubrook, Inc.*, 673 Fed. Appx. 238, 241 (2016) ("we have never held that a temporal gap of one month alone sufficiently demonstrates a causal connection.")

[40] *Clark Cty. Sch. Dist. V. Breeden*, 532 U.S. 268, 273 (2001).

this Court, in dicta, questioned the district court's conclusion at the 12(b)(6) stage that the plaintiff did not plausibly allege facts for temporal proximity between a complaint in May 2010 and an action in May 2011 because although the termination decision not to rehire became "apparent" in May 2011, discovery could show the decision happened sooner.  Mr. Qin adduced no evidence to show the decisions happened sooner. Temporal proximity alone cannot establish causation here. *Third*, there is no other evidence to establish causation.  A plaintiff can rely on "timing plus other evidence, which generally includes evidence that the employer engaged in a pattern of antagonism with the plaintiff." *Martinez v. Rapidgm, Inc.*, 290 F. App'x 521, 526 (3d Cir. 2008).  There is no "plus" here.  Contrary to antagonizing Mr. Qin, Mr. Harter had his back.  In November 2018, Mr. Harter approved Mr. Qin's promotion request.  (A0112, 0296.)  And when it was time for Mr. Harter to assign Mr. Qin a performance rating, between November 26, 2018, and December 20, 2018, Mr. Harter assigned Mr. Qin a "Strong Contributor" rating.  (A0296, 1198.)  Both of those things happened after Mr. Qin's question in October 2018.  Mr. Qin's causal connection argument for his termination theory is just as strained.  Contrary to acting at first opportunity, Vertex gave Mr. Qin four months to engage with a formal Vertex initiative.  (A0112, 0296, 0302, 0456.)  There was no requirement Vertex rate Mr. Qin, tell him he would be placed on a PIP, engage with him to help craft the PIP goals, then extend the PIP before terminating him months later.  Moreover, Mr.

Harter was not an employee at the time of Mr. Qin's termination and there is no evidence that he told anybody about the question. (A0794.) Mr. Qin's question to Mr. Harter cannot establish a retaliation claim.

Mr. Qin also cannot establish a causal connection between an adverse action and his question to Ms. Falco. There can be no causation between Mr. Qin's question to Ms. Falco and the promotion denial because Ms. Kurtz did not know about it. (A0283.) And temporal proximity alone cannot prove a causal link between Mr. Qin's question to Ms. Falco on December 13, 2018, and the decision about Mr. Qin's rating, which occurred between January 4, 2019, and January 24, 2019. (A0282.) Finally, the record is devoid of any evidence antagonism by Ms. Falco or anything else to show causation. Mr. Qin's question to Ms. Falco cannot establish a retaliation claim.

### 4. Mr. Qin's March 31, 2019 Email Cannot Support A Retaliation Claim

Mr. Qin argues Vertex retaliated against him for his March 31, 2019, email by placing him on a PIP and terminating his employment. (AOB 48.) As for the PIP theory, Vertex indisputably informed Mr. Qin of the PIP on February 8, 2019, more than a month *before* the email and he was actively working on it with Mr. Stahlheber. (A0492-0493.) Mr. Qin merely *signed* the PIP on April 2, 2019. (A0247-0248, 0287, 0520.) Thus, that theory fails. *See Verma v. Univ. of Pennsylvania*, 533 F. App'x 115, 119 (3d Cir. 2013) ("this Court has declined to

38

infer such a causal link where an employee's negative performance evaluations predated any protected activity"). As for the termination theory, Mr. Qin cannot establish causation based on temporal proximity or any other evidence. More than six weeks passed between the email and termination. (A0290-0291, 0414, 0522-0523, 0525, 0649-0650.) The record is devoid of any other "plus" evidence to show causation. On the contrary, Ms. Falco removed the comment Mr. Qin was unhappy about from his review and extended Mr. Qin's PIP period to give him more time to engage on a project. (A0254, 0289-0290, 0411, 0432-0433, 0537.) The email has no causal connection to an adverse action.

### 5. The Court Should Affirm The District Court's Order Because There Is No Evidence To Show Pretext For Retaliation

Mr. Qin cannot prove the first pretext prong (*i.e.*, Vertex reason is false) for the same reasons explained in section VII.D. He also cannot prove the second pretext prong (retaliation was the real reason), as he cannot meet the *prima-facie* case causation standard and therefore, cannot meet the heightened standard on pretext. The Court should affirm.

## VIII. CONCLUSION

The District Court properly concluded that no reasonable jury could find Vertex harassed or discriminated against Mr. Qin because he is Chinese or retaliated against him. Mr. Qin relies on conjecture and speculation without pointing to concrete evidence to support the elements of his claims. The record shows Vertex

perceived Mr. Qin to be insufficiently engaged warranting his promotion denial and termination. He acknowledged that deficiency in emails on October 16, 2018, and May 6, 2019. His disagreement now does not provide a basis for appeal. This Court should affirm the entry of Summary Judgment.

Respectfully submitted,


*s/ Tanner McCarron*
William J. Simmons (PA # 206860)
Tanner McCarron (PA # 327855)
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
(267) 402-3000

*Attorneys for Appellee*
*Vertex, Inc.*

Date: August 9, 2023

## I.    CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE <u>REQUIREMENTS, AND VIRUS CHECK</u>

I, Tanner McCarron, counsel for Appellee Vertex, Inc., certify, pursuant to Local Appellate Rule 28.3(d) that I am a member in good standing of the Bar of the Court of Appeals for the Third Circuit.  I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Brief of Appellee is proportionately spaced and has a typeface of 14-point Times New Roman, contains 11,773 words (not counting portions excluded from the word count by Rule 32(f)), and that the text of the electronic brief is identical to the text of the paper copies.  I further certify, pursuant to Local Appellate Rule 31.1(c), that Windows Defender has been run on this Brief before filing and that no virus was detected.

*s/ Tanner McCarron*

Date: August 9, 2023                Tanner McCarron

## II.    <u>**CERTIFICATE OF SERVICE**</u>

I, Tanner McCarron, counsel for Appellee Vertex, Inc. certify that on August 9, 2023 I filed the foregoing Brief of Appellee via the Court's CM/ECF system, causing a Notice of Docket Activity and a copy of the filing to be served upon the following counsel of record who are registered CM/ECF users:

Ian M. Bryson
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA 19103
Attorneys for Appellant

Pursuant to LAR 31.1 and the May 2, 2023 standing order, seven hard copies of this Brief were sent to the Clerk of the Court via Federal Express:

Office of the Clerk
United States Court of Appeals for the Third Circuit
21400 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1790

*s/ Tanner McCarron*

Date: August 9, 2023                Tanner McCarron